# Pennsylvania General Insurance Company v. Haegele

*Roger Harrington,* for petitioner.
*Paul D. Keenan,* for respondent.

GELFAND, *J.,* July 26, 1982—The matter before this court is the petition of Pennsylvania General Insurance Company, (hereinafter petitioner), to vacate or modify the award of arbitrators in the amount of $60,000 in favor of Richard A. Haegele, Administrator of the Estate of Linda Haegele, (hereinafter respondent).

The facts indicate that on July 26, 1978, Linda Haegele, respondent's daughter, died as a result of injuries she sustained while a passenger in an automobile owned by Edwin Kaisinger.

As a result of said accident, respondent, as administrator of decedent's estate, alleged that the damages incurred were in excess of $100,000; and, subsequently, by means of a settlement agreement with

Mr. Kaisinger's insurer, did recover from Mr. Kaisinger the sum of $15,000.

At the time of the accident, petitioner insured Mr. Haegele's two automobiles; and, the insurance which provided underinsured motorist coverage in the amount of $30,000 for each vehicle also covered decedent involved here.[1]

After settlement with Mr. Kaisinger, alleging losses in excess of the $15,000 recovered under Mr. Kaisinger's insurance policy, respondent sought recovery of the balance of losses from petitioner through the underinsured motorist coverage included in the insurance purchased from petitioner.

Further, since the alleged damages exceeded the coverage for one vehicle, respondent sought payment of the actual losses alleged up to the maximum amount of coverage provided for each vehicle by seeking to cumulate or "stack" the coverage.[2]

However, petitioner refused payment; and, subsequently, upon petition of respondent herein, the matter was ordered to proceed to arbitration in accordance with the terms of the insurance policy provided by petitioner.[3]

---

1. We have deemed the preliminary objections filed by respondent herein to be an answer upon the merits for the purpose of deciding the instant petition. See Dauphin Deposit Bank & Trust Co. v. Wm. B. Tenny, Inc., 285 Pa. Super. 136, , 426 A.2d 1179, 1181 (1981)."

2. It is not disputed that respondent paid premiums for both automobiles or that the deceased was covered under the insurance involved here at the time of her demise.

3. Such accumulation of coverage is commonly known as "stacking" and has been the subject of many appellate court decisions involving uninsured motorist coverage. See generally State Farm Mutual Automobile Insurance Co. v. Williams, 481 Pa. 130, 392 A.2d 281 (1973); Marchese v. Aetna Casualty and Surety Company, no. 2543 (Superior Court, filed Janu-

Thereupon, the matter proceeded to arbitration under the terms of the Pennsylvania Uniform Arbitration Act, 42 Pa. C.S. §7301 et seq. in keeping with the understanding between the parties; and, following a hearing on the merits, the arbitrators made an award in favor of respondent in the amount of $60,000.[4]

Following this, petitioner filed a timely appeal with this court, alleging that the award should be vacated or modified as excessive since the policy terms limited underinsured motorist coverage to the amount provided for one vehicle, i.e. $30,000, and precluded stacking.[5]

---

ary 23, 1981); Harleysville Mutual Casualty Co. v. Blumling, 429 Pa. 389, 241 A.2d 112 (1968).

Further, this court has recently decided a "stacking" case which involved no-fault benefits. See Gerald Alan Wilson v. Keystone Insurance Company, November term, 1979, no. 3822. See also Heinsey v. Nationwide Insurance Co., 21 D.&C. 3d 127 (1982); Ayers v. Liberty Mutual Fire Insurance Co., no. 163, Civil, 1981, Court of Common Pleas, Monroe County.

4. See order of our brother, Judge Murphy, Court of Common Pleas, Philadelphia County, July term, no. 1835, dated March 4, 1981, Richard A. Haegele v. Pennsylvania General Insurance Company.

5. Inasmuch as the parties agreed that arbitration is to proceed under the Pennsylvania Uniform Arbitration Act, 42 Pa. C.S. §7301 et seq., our scope of review is establish and limited by such act as follows:

"§Scope of Subchapter

(a) General rule — An agreement to arbitrate a controversy on a nonjudicial basis shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to this subchapter or any other similar statute, in which case the arbitration shall be governed by this subchapter.

(d) Special application

The fruits of our research indicate that no appellate court in our Commonwealth has addressed the issue of stacking underinsurance benefits; hence, our determination herein is one of first impression.[6]

Our appellate courts have consistently upheld awards of arbitrators permitting the stacking of the uninsured motorist benefits,[7] and a number of our

---

(2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict."

Further, although the parties do not have an understanding in writing to proceed under subchapter A, it does appear that they have agreed to do so pursuant to an agreement made in the presence of the arbitrators.

Hence, since the parties have agreed that the policy terms incorporate statutory arbitration and they have further agreed that sub-chapter A of the Uniform Arbitration Act of 1980 is applicable, it is the view of this court that the proper scope of review is that set forth in section 501B of said act which provides that the provisions relating to special application as set forth in 7302(d)2 shall be applicable.

Hence, inasmuch as 7302(d)2 is applicable, it is our view that in reviewing the arbitration award herein, we may modify same or correct same where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

6. Regarding Limitation of Liability, said policy states as follows:

"LIMIT OF LIABILITY

The limit of liability shown in the Schedule for this coverage [$30,000] is our maximum limit of liability for all damages resulting from any one accident.

This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the declarations, or vehicles involved in the accident . . ."

7. See State Farm Mutual Automobile Insurance Co. v. Alabama, 332 So. 2d 623 (1976).

courts of common pleas have permitted the stacking of no-fault benefits,[8] on the basis that the legislation dealing with uninsured motorist benefits and no-fault benefits reveal a clear legislative intent to establish a system of insurance whereby all injured parties covered by said legislation are to be compensated to the full extent of their injuries up to the maximum amounts of all applicable insurance policies but not in excess of actual damage so long as the premiums are paid.

It is our view that although the benefits to be derived from coverage for underinsurance are not encompassed specifically by the aforementioned legislation, the same public policy considerations do exist; and, that where there is underinsurance coverage, injured parties should be compensated to the full extent of their injuries up to the maximum of all applicable insurance policies, but not in excess of actual damages so long as the premiums are paid.

As indicated hereinbefore, respondent contends that its policy contained a limitation of liability clause which precludes stacking and that this should govern its exposure to liability.

As stated before, this clause reads, in part, as follows:

"LIMIT OF LIABILITY

The limit of liability shown in the Schedule for this coverage [$30,000] is our maximum limit of liability for all damages resulting from any one accident.

---

8. See State Farm Mutual Automobile Insuance Co. v. Williams, 481 Pa. 130, 392 A.2d 281 (1978); (Stack of uninsured motorist coverage), Marchese v. Aetna Casualty and Surety Company, no. 2543 (Superior Court filed January 23, 1981); (Stacking uninsurance coverage); Harleysville Mutual Casualty Co. v. Blumling, 429 Pa. 389, 241 A.2d 112 (1968) (Stacking uninsurance coverage).

This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the declarations, or vehicles involved in the accident."

After weighing the instant matter in light of the declared legislative intent pertaining to no-fault benefits,[9] and public policy considerations dealing with no-fault benefits, and uninsured motorist benefits, it is our view that the same policy consider-ations should also apply to underinsured motorist coverage.

Hence, we find that the limitation clause involved here cannot stand, since we believe the policy in this Commonwealth in all instances is to provide for the maximum feasible restoration of injured indi-viduals and compensation for economic losses of survivors; and, to permit such an exclusionary clause to be effective would create a method of controverting same.[10]

Further, as previously indicated, this court's scope of review herein would allow modification or correction of the arbitrator's award if such award were contrary to law and is such that had it been a

9. See Gerald Alan Wilson v. Keystone Insurance Com-pany, Court of Common Pleas, Philadelphia County, Novem-ber term, 1979, no. 3822. (Stacking of no-fault coverage), Heinsey v. Nationwide Insurance Co., 21 D.&C. 3d 127 (1982); Ayers v. Liberty Mutual Fire Insurance Co., Court of Common Pleas, Monroe County, no. 163 Civil, 1981.

10. The legislative policy as expressed in the No-fault Act, in pertinent part, is as follows:

"§1009.102 Findings and purposes

(a) Findings. — The General Assembly hereby finds and declares that:

. . .

(3) the maximum feasible restoration of all individuals in-jured and compensation of the economic losses of the survi-vors of all individuals killed in motor vehicle accidents on

verdict of a jury the court would have entered a different judgment or judgment notwithstanding the verdict.[11]

In light of the view of this court as expressed hereinbefore, we see no basis on which to find that the arbitrator's award was contrary to law and is such that had it been a verdict of a jury, the court would have entered a different judgment notwithstanding the verdict.

On the contrary, it is the view of this court that petitioner's contentions regarding the applicability of the exclusionary clause are without merit.

Therefore, in light of the views expressed hereinbefore, we find an insured may cumulate and recover losses under applicable underinsurance motorist coverage:

(1) If the premiums for such coverage have been paid, and

(2) If recovery under the applicable underinsurance coverage does not exceed actual losses incurred.

Accordingly, for the foregoing reasons we did enter the following order:

"AND NOW, this 14th day of January, 1982, upon consideration of the Petition to Vacate or in

---

Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce;"

. . .

11. Pertaining to the applicability of the exclusionary clause, see Hionis v. Northern Mutual Insurance Co., 230 Pa. Super. 511, 327 A.2d 363 (1974). We do not reach the issue of the applicability of the exclusionary clause inasmuch as we have decided this matter on other grounds. However, it should be noted that nowhere in the record is there any indication that Mr. Haegele, as the policyholder, was aware of the exclusionary clause or of the effect of same upon him.

the Alternative to Modify the Award of Arbitrators filed by Pennsylvania General Insurance Company (hereinafter Petitioner) and the Answer[12] thereto of Richard A. Haegele (hereinafter Respondent), together with argument thereon and a careful review of the memoranda submitted in connection therewith, it is hereby ORDERED and DECREED that the aforesaid Petition is DENIED. It is further ORDERED and DECREED that the Award of the Arbitrators herein is confirmed, and the Prothonotary is directed to enter judgment thereon.

BY THE COURT:

S/ Gelfand, J."

12. See Footnote 4, supra. Also See 42 Pa. C.S. §7302(d).