**BANK OF AMERICA, N.A. and Gregory Simakas and Michael Newman,**

v.

**The ESTATE OF Robert L. HOOD, Linda H. Jansen, Co–Executrix and Devisee of the Estate of Robert L. Hood, and Larry Hood, Co–Executor and Devisee of the Estate of Robert L. Hood and Alexander K. Wing and Jill Swenson.**

**Appeal of Gregory Simakas and Michael Newman.**

Superior Court of Pennsylvania.

Argued Dec. 7, 2011.

Filed March 22, 2012.

Reargument Denied July 10, 2012.

---

2. The Superior Court, in reversing the trial court's conclusion that there was no factual question regarding reckless conduct, an issue not specifically raised by Plaintiff on appeal, noted that the trial court erroneously based the entry of summary judgment on the deposition testimony of Monaghan, citing to the rule of *Nanty–Glo v. American Surety*, 309 Pa. 236, 163 A. 523 (1932), that a moving party may not rely exclusively on oral testimony to establish the absence of a genuine issue of material fact. The moving party here, however, did not rely on or present the deposition testimony of Monaghan to support its motion for summary judgment; rather, Plaintiff introduced the deposition to support her allegation that Monaghan's conduct was reckless. Thus, the Superior Court's determination in this regard was improper.

Colville, retired Senior Judge, filed dissenting opinion.

Samuel H. Simon, Pittsburgh, for appellants.

Jarrod D. Shaw, Pittsburgh, for Bank of America, appellee.

Brian F. Levine, New Castle, for Hood, appellee.

Steven M. Beinsel, Pittsburgh, for Swenson, appellee.

BEFORE: MUSMANNO, DONOHUE and COLVILLE*, JJ.

OPINION BY DONOHUE, J.:

Appellants, Gregory Simakas and Michael Newman ("Appellants"), appeal from the trial court's January 26, 2011 order setting aside a sheriff's sale of real estate. We reverse.

The record reflects the following factual and procedural background. On February 13, 2009, Bank of America (the "Bank") filed a complaint in foreclosure against a house and 100 acres of property (the "Property") owned by the Estate of Robert L. Hood (the "Estate"), as the Estate was in default under the terms of its mort-

* Retired Senior Judge assigned to the Superior Court.

gage loan from the Bank. The original sheriff's sale date was July 16, 2010, but the sale was continued to September 17, 2010. On that date, Appellants put forth the winning bid of $255,800.00. The outstanding balance on the mortgage as of that date was $204,090.84.

■ The Estate filed a petition to set aside the sale on October 18, 2010. The trial court conducted a hearing on the Estate's petition on January 26, 2011. At the hearing, the Estate offered comparative market analyses indicating that the Property was worth $562,000.00. The Estate also introduced a letter of intent from Alexander K. Wing ("Wing") indicating that Wing stood ready to purchase the Property for $580,000.00.[1] At the conclusion of the hearing, the trial court concluded that the sheriff's sale price was grossly inadequate. The trial court entered an order directing Wing and the Estate to enter a binding purchase agreement by January 31, 2011 and close the sale by February 28, 2011. On February 18, 2011, Appellants filed their petition seeking to intervene and asking the trial court to rescind the January 26, 2011 order.[2] On February 24, 2011 the trial court entered an order permitting Appellants to intervene but refusing to rescind the January

26, 2011 order. Appellants filed this timely appeal on February 25, 2011. They raise the following issues for our review:

1. Did the trial court err or abuse its discretion when it ordered the Sheriff's sale of September 17, 2010 to be set aside on the basis that 'consideration obtained at the time of the Sheriff's sale was grossly inadequate'?

2. Did the trial court err or abuse its discretion when it found that the evidence presented at the January 26, 2011 hearing supported a finding that the winning bid of the September 17, 2010 Sheriff's sale was 'grossly inadequate'? In particular:

   a. Did the trial court err or abuse its discretion when it based its decision—in whole or in part—upon the Market Analysis produced by counsel for [the Estate]?

   b. Did the trial court err or abuse its discretion when it based its decision—in whole or in part—upon testimony that [Wing] had interest in purchasing the at-issue real estate for a certain price?

Appellants' Brief at 7.

■ Rule 3132 of the Pennsylvania Rules of Civil Procedure provides as follows:

---

1. Wing owned land adjoining the Property and wanted to purchase the Property as a "buffer" for his land. N.T., 1/26/11, at 51.

2. In their February 18, 2011 petition, Appellants set forth their substantive arguments in support of rescinding the January 26, 2011 order. Thus, Appellants gave the trial court the opportunity to consider their arguments, and the court rejected them. Since Appellants raised their arguments before the court below, Pa.R.A.P. 302(a) does not preclude Appellants from raising those same arguments here.

   We recognize that filing an answer is the proper method of opposing a petition to set aside a sheriff's sale. *Dauphin Deposit Band and Trust Co. v. Tenny, Inc.*, 285 Pa.Super.

136, 426 A.2d 1179, 1181 (1981). If, however, the party opposing the petition to set aside the sheriff's sale responds "in a form other than an answer," this Court has discretion to overlook the procedural defect. *Id.* (*citing* Pa.R.C.P. 126). In the instant matter, the Bank opposed the setting aside of the Sheriff's sale at the trial court's January 26, 2011 hearing. Appellants were present at the hearing but did not participate or seek to intervene until after the trial court granted the Estate's petition. While the wisdom of proceeding in this manner is questionable, we do not believe Appellants' procedural misstep warrants dismissal of this appeal. Appellants' misstep apparently did not prejudice the other parties, inasmuch as the Estate and Wing do not argue for dismissal of the appeal.

Upon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.

Pa.R.C.P. 3132. Equitable considerations govern the trial court's decision to set aside a sheriff's sale. *Bornman v. Gordon*, 363 Pa.Super. 607, 527 A.2d 109, 111 (1987), *appeal denied*, 517 Pa. 620, 538 A.2d 874 (1988). This Court will not reverse the trial court's decision absent an abuse of discretion. *Id.*

As a general rule, the burden of proving circumstances warranting the exercise of the court's equitable powers is on the applicant, and the application to set aside a sheriff's sale may be refused because of the insufficiency of proof to support the material allegations of the application, which are generally required to be established by clear evidence.

*Id.* An abuse of discretion occurs where, for example, the trial court misapplies the law. *Warmkessel v. Heffner*, 17 A.3d 408, 413 (Pa.Super.2011), *appeal denied*, —— Pa. ——, 34 A.3d 833 (2011).

■ In the instant matter, the trial court set aside the sheriff's sale because of the gross inadequacy of the sale price compared to the property's value. The following governs our inquiry as to the gross inadequacy of the sale price:

Where a sale is challenged based upon the adequacy of the price our courts have frequently said that mere inadequacy of price standing alone is not a sufficient basis for setting aside a sheriff's sale. However where a 'gross inadequacy' in the price is established courts have found proper grounds exist to set aside a sheriff's sale. The courts have traditionally looked at each case on its own facts. It is for this reason that the term 'grossly inadequate price' has never been fixed by any court at any given amount or any percentage amount of the sale. Further, it is presumed that the price received at a duly advertised public sale is the highest and best obtainable.

*Blue Ball Nat'l Bank v. Balmer*, 810 A.2d 164, 166–67 (Pa.Super.2002) (citations omitted), *appeal denied*, 573 Pa. 662, 820 A.2d 702 (2003). "The purpose of a sheriff's sale in mortgage foreclosure proceedings is to realize out of the land, the debt, interest, and costs which are due, or have accrued to, the judgment creditor." *Provident Nat'l Bank, N.A. v. Song*, 832 A.2d 1077, 1081 (Pa.Super.2003), *appeal denied*, 577 Pa. 736, 848 A.2d 929 (2004). This Court has held that "the outstanding mortgage balance must be considered in determining the adequacy of the sale price." *Continental Bank v. Frank*, 343 Pa.Super. 477, 495 A.2d 565, 569 (1985).

In *Balmer*, the trial court found no gross inadequacy where the property in question sold for 72% of the appraisal value. *Balmer*, 810 A.2d at 167–68. This Court affirmed. *Id.* We also explained that evidence of the purchaser's proposed resale does not alone control the outcome of a motion to set aside a sheriff's sale:

[A]ppellate courts have noted that it is the purchaser who takes all of the risk at a sheriff's sale. These sales are advertised and open to the public with the sale going to the highest bidder. The high bidder, however, takes its purchase along with inherent risks, for the future value of property is not certain. In this case, although the [purchaser at sheriff's sale] may turn a profit from their purchase, their action is not without risk, and the price they obtain upon resale does not alone control.

*Id.* at 168.

Likewise, in *Fidelity Bank v. Pierson*, 437 Pa. 541, 264 A.2d 682 (1970), this

Court affirmed the trial court's order refusing to set aside a sheriff's sale. The property in question was purchased in 1959 for $17,900.00 and the owners subsequently spent 12,800.00 on additions.[3] *Id.* at 544, 264 A.2d at 684. The property sold at sheriff's sale on July 31, 1968 for $16,000.00. *Id.* at 543–44, 264 A.2d at 683–84. The Supreme Court reasoned that "mere inadequacy" of the price was not a sufficient reason to set aside the sale.

In *Miners Nat'l Bank v. Bowman,* 334 Pa. 534, 6 A.2d 286 (1939), the property in question sold for $2,250.19. The outstanding mortgage on the property was over $6,000.00, and the trial court found the property's fair market value to be $10,000.00. *Id.* at 535–36, 6 A.2d at 287. The Supreme Court concluded that the "ratio of disparity between the sale price and the fair market value" was not so great as to warrant a conclusion that the sale price was grossly inadequate. *Id.* at 537, 6 A.2d at 288. The Supreme Court arrived at this conclusion even though the sale price was substantially less than the outstanding debt on the property.

Pennsylvania courts have concluded that a sheriff's sale price is grossly inadequate where sale price was a small percentage—roughly ten percent or less—of the established market value. In *Delaware County Nat'l Bank v. Miller,* 303 Pa. 1, 154 A. 19 (1931), the Supreme Court upheld the trial court's determination that a sale price of $2,000.00 was grossly inadequate for a property valued at more than $69,000.00. In addition, prospective bidders received conflicting information as to whether the property would be encumbered by debt after the sheriff's sale. *Id.* at 4, 154 A. at 20–21. The Supreme Court agreed with the trial court's finding that the mortgagee bank (which was also the successful bidder) made announcements immediately

prior to the sale that were meant to discourage other bids. *Id.* Likewise, in *Warren Pearl Works v. Rappaport,* 303 Pa. 235, 237–38, 154 A. 587, 587–88 (1931), the Supreme Court concluded that a purchase price of $3,500.00 for a property valued at $31,000.00 was grossly inadequate. In that case, as well, the record reflected a misunderstanding, prior to the sheriff's sale, of whether certain encumbrances would be discharged by the sale. *Id.* Likewise, in *Capozzi v. Antonoplos,* 414 Pa. 565, 201 A.2d 420 (1964), stock valued at $20,000.00 was sold at sheriff's for $58.30 toward an outstanding $982.57 in debt. The Supreme Court affirmed the trial court's order setting aside the sale, reasoning that the gross inadequacy of the price was a sufficient reason, in and of itself, to do so. *Id.* at 566–69, 201 A.2d at 421–22; *see also First Fed. Sav. & Loan Ass'n v. Swift,* 457 Pa. 206, 214, 321 A.2d 895, 899 (1974) (Eagen, J., concurring) ($5.00 plus $329.46 in taxes toward property worth $6,000.00 was a grossly inadequate sale price).

In the instant matter, the $255,800.00 purchase price represents roughly 44% of Wing's $580,000.00 offer. The trial court reasoned that the purchase price was grossly inadequate because it was substantially less than what Wing would have offered had he "been afforded the opportunity to bid on the property." Trial Court Opinion, 4/25/11, at 10.

We believe the trial court abused its discretion in several respects. Assuming *arguendo* that the Property is worth as much as $580,000.00, the purchase price represents a far greater portion of the market value than cases such as *Miller, Warren Pearl Works,* and *Capozzi,* in which our courts have deemed the purchase price grossly inadequate. Moreover,

**3.** The Supreme Court deemed original purchase price and the expense of subsequent improvements to be the only competent evidence of the property's current value.

the purchase price exceeded the amount of the outstanding debt by more than $50,000.00.

In addition, the sale was duly advertised and the bidding process was competitive. N.T., 1/26/11, at 45. The trial court did not find any procedural defect indicating that the sale was not lawfully conducted.[4] In this respect also, the instant matter is distinguishable from *Miller* and *Warren Pearl Works,* in which procedural irregularities may have hampered the competitive bidding process and contributed to the grossly inadequate sale price. Wing testified that he believed negotiations between the Estate and the Bank were ongoing and therefore was not actively pursuing a purchase of the Property. N.T., 1/26/11, at 47, 51. Nothing in Wing's testimony explains his failure to learn of a duly advertised sale.

Finally, we conclude that the trial court abused its discretion in failing to apply the rule that the price obtained at a lawfully conducted sheriff's sale is presumptively the best price obtainable. *Balmer,* 810 A.2d at 166–167. The trial court found Wing credible in his current offer of $580,000.00. Credibility is within the province of the trial court, and in any event we do not doubt the sincerity of Wing's offer. Nonetheless, the fact remains that Wing's offer post-dated the sheriff's sale. At the hearing on the petition to set aside the sale, Wing testified only that he would have "paid in excess of the price that the property fetched, up to the $580,000.00 we believe the property is worth." N.T., 1/26/11, at 47. The only conclusion discernible from Wing's testimony is that the sheriff's sale price would have been an undetermined amount higher than Appellants' $255,800.00 offer if Wing were there. Nothing in the record supports a conclusion that the sheriff's sale price—presumed to be the best price obtainable—would have risen to anywhere near $580,000.00, even with Wing present. This is so because we have no way to know how long Appellants would have remained in the bidding. After the fact, Wing had no choice but to make a high offer in hope of persuading the court that the sale price was grossly inadequate. In essence, the trial court permitted Wing to buy his way out of his failure to attend a lawfully conducted sheriff's sale.

In *Balmer,* the sheriff's sale purchaser was able to sell the land at a profit shortly after the sheriff's sale. *Balmer,* 810 A.2d at 168. We reasoned that the purchaser's ability to procure a higher offer shortly after the sale did not require the setting aside of the sale. *Id.* The purchaser at a sheriff's sale assumes some risk concerning the property's future value, and in *Balmer,* we declined to deprive the purchaser of the reward he received for assuming the that risk. *Id.* Similarly, in the instant matter, Appellants purchased the Property at a lawfully conducted sheriff's sale. If the Property can be resold at a profit, Appellants are entitled to reap the reward of the risk they took in purchasing the Property at the sheriff's sale.

For all of the foregoing reasons, we conclude that the trial court abused its discretion in setting aside the sheriff's sale.

Order reversed. Jurisdiction relinquished.

COLVILLE, J. files a Dissenting Opinion.

---

4. On September 17, 2010, the day of the sheriff's sale at issue, the trial court entered an order continuing the September 17, 2010 sheriff's sale based on a last-minute request from the Estate. The trial court rescinded that order shortly after entering it, upon learning that the Bank did not consent. None of the parties suggests that any potential bidder was aware of the continuance order during the short time it was in effect.

DISSENTING OPINION BY
COLVILLE, J.:

I would dismiss this appeal because I do not find that Appellants preserved their issues for appeal. Although Appellants attended the hearing on the petition to set aside the sheriff's sale, they were not parties to the litigation at that time. Appellants' interest in the property/proceeding was the same (if not greater) at the time of the hearing as it was following the hearing; nevertheless, they did not seek to intervene and obtain the rights of a party until after the trial court entered the order on appeal.[1] Their post-hearing attempt to raise their objections, in their Motion to Set Aside, was untimely, and it did not serve to properly preserve their appellate issues in the trial court. As this Court has explained:

> [I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*Tindall v. Friedman*, 970 A.2d 1159, 1174 (Pa.Super.2009) (citations omitted).

I do not find the opposing parties' position on the dismissal of the appeal to be of any import to this Court's application of the law. Based upon the above law, I would dismiss the appeal. Accordingly, I dissent.

---

1. Bank of America, N.A., who was a party to the proceeding below, has filed an appellee's brief in this Court which sets forth an argument in favor of reversing the order on appeal; however, Bank of America, N.A., did not file an appeal from that order and is not an appellant in this appeal.